# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THOMAS LOVATO,

        Petitioner,

v.                                         No. CIV 09-967 RB/RHS

JAMES JANECKA, Warden,
Lea County Correctional Facility,

        Respondent.

### MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION[1]

#### Findings

1.      On October 5, 2009, Petitioner Thomas Lovato ("Lovato") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.  [Doc. 1.] Ryan is confined at the Lea County Correctional Facility ("LCCF") in Hobbs, New Mexico and proceeds *pro se*.

2.      On November 9, 2009, Respondent James Janecka ("Respondent") filed an Answer with exhibits. [Doc. 8.]  On September 24, 2010, Lovato filed a reply.  [Doc. 16.]

3.      As part of its review of Lovato's § 2254 petition, the Court considered his petition [Doc. 1], Respondents' Answer [Doc. 8], Lovato's reply [Doc. 16], and attachments submitted with pleadings.

---

[1]**Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations.  A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.**

4. As grounds for federal review, Lovato raises nine claims of ineffective assistance of counsel that are described below.

5. Respondent concedes that Lovato exhausted his claims. [Doc. 8, ¶ 8.]

6. Respondent does not challenge the timeliness of Lovato's federal habeas petition, and the Court concludes it was filed within the required one-year limitation period.

7. Respondent argues, *inter alia*, that Lovato has not suffered any violations of federal law or the constitution. Respondent further asserts that Lovato has not alleged or established the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. [Doc. 8, ¶¶ 4, 9] (*citing* 28 U.S.C. § 2254(d)). Respondents ask that Lovatos' request for an evidentiary hearing be denied and that the petition be denied and dismissed, with prejudice. [Doc. 8, ¶ 18.]

8. The Court considered whether to conduct an evidentiary hearing under 28 U.S.C. § 2254(e), and whether it needed additional briefing on any of the issues, but determined that neither was necessary. After a thorough review of the pertinent law, pleadings, and exhibits, the Court recommends that Lovato's § 2254 petition be denied and dismissed, with prejudice.

## Procedural and Factual History

9. Following a jury trial on February 21 and 22, 2007, Lovato was found guilty of criminal sexual penetration in the first degree (child under 13); criminal sexual contact of a minor in the third degree (child under 13); and criminal sexual contact of a minor in the third degree (child under 13). Two additional counts were dismissed following a motion for directed verdict, and Lovato was acquitted of two other counts charging criminal sexual penetration of a child under the age of 13. [Doc. 1, p. 2; Doc. 8, p. 2; Doc. 8, Exs. A and Q.]

10. Lovato was sentenced to a total term of 12 years in prison, to be followed by a 2-year period of parole. [Doc. 8, Ex. A.]

11. The alleged victim, Angelic Montoya ("Angelic"), testified at trial. She was 16 years old then and lived in Albuquerque with her mother, grandmother, and her mother's boyfriend. [Doc. 8, Ex. D.]

12. Angelic testified she knew Lovato because he was her Aunt Audrey's boyfriend. Angelic lived with her aunt and Thomas Lovato half of the time and the other half with her mother. [Doc. 8, Ex. D.]

13. Angelic testified that her aunt and Lovato bought her clothes and fed her. When Angelic stayed with them, she slept in the living room. She testified that while Lovato treated her kindly "for the most part," he touched her inappropriately for the first time when she was 7 years old and that he continued to touch her inappropriately for some years. [Doc. 8, Ex. D.]

14. Angelic testified about a number of occasions when Lovato touched her inappropriately, outside the presence of her aunt. [Doc. 8, Ex. D.]

15. Upon being arrested, Lovato was given his Miranda rights and he waived those rights before making a complete and full confession as to the allegations of criminal sexual penetration and criminal sexual contact of Angelic, a child under the age 13. Detective (then Deputy) Kasy Jacobson of the Bernalillo County Sheriff's Sex Offender and Tracking Unit testified as to the foundation of the videotaped confession of Lovato. [Doc. 8, Ex. D.]

16. Lovato testified at trial and admitted the criminal sexual contact had occurred but claimed it was accidental. He stated that once aware that he was sexually touching a small child, he immediately withdrew his hand. [Doc. 8, Ex. D.]

17.     At trial and sentencing, Lovato was represented by Attorney James Baiamonte. [*See* Doc. 8, Ex. C.]

18.     Attorneys Joseph N. Riggs III and Natalie Bruce entered their appearances as appellate counsel for Lovato.  On May 17, 2007, Riggs filed a Notice of Appeal on behalf of Lovato. [Doc. 8, Ex. B.]

19.     On June 26, 2007, the New Mexico Court of Appeals issued an Order directing trial counsel Baiamonte to file a docketing statement. [Doc. 8, Ex. C.]

20.     On July 5, 2007, Attorney Baiamonte filed a docketing statement, raising a single issue: insufficient evidence to support the convictions. [Doc. 8, Ex. D.]

21.     In later July 2007, it appears that Riggs intended to amend the docketing statement to add claims of ineffective assistance of trial counsel but recognized the claims should be brought in a habeas petition. [Doc. 8, Ex. E.]

22.     On August 3, 2007, the New Mexico Court of Appeals issued a notice of proposed summary disposition, setting forth its intention to affirm the convictions. [Doc. 8, Ex. F.] No opposition to the proposed summary disposition was filed.

23.     On October 3, 2007, the Court of Appeals affirmed the convictions. [Doc. 8, Ex. G.] Lovato did not file a petition for writ of certiorari in the United States Supreme Court. [Doc. 1, p. 3.]

24.     On November 13, 2007, Lovato filed a state habeas petition in the Second Judicial District Court.  The state habeas petition set out the same nine claims of ineffective assistance of trial counsel as are presented in the federal habeas petition. [Doc. 1; Doc. 8, Ex. I.]

25.     On January 28, 2008, the State filed a response to the state habeas petition, with exhibits, including portions of the trial transcript. [Doc. J, Exhibits.] The State argued in part that

the evidence against Lovato was "overwhelming."  Lovato confessed and his confession was supported by Angelic's trial testimony.  "The substantial evidence against [Lovato] wiped out any prejudice that may have been caused had his trial counsel been ineffective." [Doc. J, p. 2.]  The State also asserted that Lovato failed to satisfy the two-prong test set out in Strickland v. Washington, 466 U.S. 668, 687 (1984).

26.     On January 31, 2008, the Second Judicial District Court issued an Order denying the state habeas petition.  The District Court Judge, Neil Candelaria, stated he had reviewed the pleadings and determined that Lovato's trial counsel's actions: "were not deficient and did not fall below the standard of a reasonably competent lawyer."  In addition, the state judge found that Lovato failed to demonstrate he was prejudiced by his trial counsel's actions and that the outcome of this trial would have been different.  The state court further concluded that trial counsel's actions or failure to act "could be conceived as trial strategy." [Doc. 8, Ex. K.] Judge Candelaria also presided over the trial proceedings. [Doc. 8, Ex. M, p. 2.]

27.     On February 29, 2008, Lovato filed a petition for writ of certiorari to the Second Judicial District Court.  He claimed, in part, that no evidentiary hearing was held on his state habeas petition "despite the fact that the case included zero physical evidence making the credibility of the State's witnesses key to a conviction and the incredible fact that the trial attorney's failures and lack of candor resulted in all defense witnesses' testimony being suppressed." [Doc. 8, Ex. L.] Lovato argued that the state district court's denial of the habeas petition was erroneous for a number of reasons, including ineffective assistance of counsel. [Doc. 8, Ex. L, pp. 5-6.]

28.     On March 26, 2008, the State filed a response to Lovato's petition for writ of certiorari.  The State argued that the court properly followed applicable state court rules in

considering the petition and denying state habeas corpus relief. [Doc. 8, Ex. M, p. 6.]  Moreover, an evidentiary hearing was not warranted under New Mexico state law.

29.     On April 2, 2008, the New Mexico Supreme Court issued an Order denying the Petition for Writ of Certiorari. [Doc. 8, Ex. N.]

30.     On July 1, 2008, Lovato filed a Petition for Writ of Certiorari in the United States Supreme Court.  Attorney Scott M. Davidson brought this petition on behalf of Lovato.  Counsel for Lovato argued that the state district court improperly applied Strickland by imposing an elevated burden on Lovato to demonstrate constitutionally deficient performance.  More specifically, counsel asserted that under Strickland, a petitioner need only show a "reasonable probability" that the outcome of the proceeding would have been different with respect to the claim of ineffective assistance of counsel.  The state court, however, applied a different standard requiring the petitioner to show the "outcome of this trial would have been different." [Doc. 8, Ex. O, p. 6.] Lovato claimed this burden was "set unreasonably high."

31.     On October 6, 2008, the Supreme Court issued a letter, denying the petition for writ of certiorari. [Doc. 8, Ex. P.]

32.     On October 5, 2009, Lovato filed the present federal habeas petition. [Doc. 1.] Lovato seeks reversal of his conviction based on his position that he was denied effective assistance of counsel under the Sixth Amendment.  [Doc. 1.]

### Deference to State Court Adjudications

33.     Lovato's petition is analyzed under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  An application for writ of habeas corpus brought by an individual in custody pursuant to a judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of

6

the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state proceedings.  28 U.S.C. § 2254(d).

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

Allen v. Mullin, 368 F.3d 1220, 1234 (10th Cir. 2004) (*citing* Bell v. Cone, 535 U.S. 685, 694 (2002)), *cert. denied*, 543 U.S. 1156 (2005).  This means that a federal court is precluded from granting habeas relief, except in the narrow circumstances described in § 2254(d), and that this Court must apply a presumption that the factual findings of the state court are correct unless the petitioner can rebut this presumption by clear and convincing evidence.  Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833 (2000).

34.     To justify federal habeas relief, the decision of the state court must not only have been erroneous, but also unreasonable.  Williams v. Taylor, 529 U.S. 362, 365, 376 (2000); Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004), *cert. denied,* 546 U.S. 1030 (2005).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 202 F.3d 283 (Table, Text in Westlaw), No. 98-7158, 2000 WL 14404 at *6 (10th Cir. Jan. 10, 2000) (unpublished), *cert. denied,* 530 U.S. 1265 (2000).

35.     Before reaching Lovato's habeas claims, the Court first determines whether the state court adjudicated the claims on the merits.

36.     In his state habeas petition, Lovato raised all of the claims he asserts in the federal habeas petition. [Doc. 1, Doc. 8, Ex. I.] In its order denying the state habeas petition, Judge Candelaria stated he had reviewed the pleadings, including the habeas petition which was prepared by counsel.  The petition carefully addressed all nine claims of ineffective assistance of counsel. [Doc. 8, Ex. I; Doc. K.] In addition, the state court observed it reviewed the State's response to the habeas petition and multiple pages of excerpts from the two-day trial.  The response provided extensive analysis as to each of Lovato's claims, along with transcripts of pertinent trial testimony. [Doc. 8, Ex. J, attached transcripts; Doc. 8, Ex. K.] In denying the state habeas petition, Judge Candelaria properly applied the two-prong Strickland standard in evaluating all of Lovato's ineffective assistance of counsel claims.  The state court expressly determined that Lovato failed to meet either prong of the Strickland test, and that moreover, any action or inaction by trial counsel could be construed as trial strategy. [Doc. 8, Ex. K.]

37.     Even if the state court's denial of Lovato's state habeas petition is viewed as summary, a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA to state court's rejection of claim's merit, despite lack of any reasoning); Weeks v. Angelone, 176 F.3d 249, 259 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000) (same).  See also Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (refusing to presume that a summary order indicated a cursory or haphazard review of a petitioner's claims).

38.     The Court concludes that the claims Lovato raises in this federal habeas proceeding were adjudicated on the merits in state court and are, therefore, subject to review under the standard set forth in 28 U.S.C. § 2254(d).

### Analysis

### INEFFECTIVE ASSISTANCE OF COUNSEL

39.     The United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984) governs the inquiry of whether an attorney's performance was ineffective.  In order to establish a claim of ineffective assistance of counsel, Lovato must show both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that he was prejudiced because counsel's errors rendered the outcome of the state court's proceedings unreliable.  Id.  In applying the test of whether an attorney's performance was deficient and fell below an objective standard of reasonableness, the Tenth Circuit advises that "we give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Bullock v. Carver, 297 F.3d 1036, 1044 (10th Cir.) (internal citation omitted), cert. denied, 537 U.S. 1093 (2002).  In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 522 U.S. 844 (1997).

40.     The question under Strickland is not whether counsel could have done more or even better, but whether counsel's actions or decisions were "[objectively unreasonable] in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  In other words, Lovato may not have received the best or perfect legal representation at

9

every step of the proceeding, but a defendant is not entitled to perfect or error-free representation. Washington v. Watkins, 655 F.2d 1346, 1357 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982); United States v. Rhoads, 617 F.2d 1313, 1319 (8th Cir. 1980); Martinez v. U.S., 2008 WL 2329171, *5 (D. Utah June 3, 2008) (unpublished).  The Court does not indulge in the "distorting effects of hindsight" which would be contrary to what Strickland attempts to eliminate.  Strickland, 466 U.S. at 689.

41.     Lovato's nine claims of ineffective assistance of counsel are discussed below.

### *(1)  Failure to Submit Jury Instructions*

42.     Lovato summarily argues, without more, that trial counsel's failure to submit a jury instruction for the lesser-included offense(s) of battery on multiple counts resulted in ineffective assistance of counsel. [Doc. 1, p. 5.] He neither specifically alleges how trial counsel was deficient in this regard or how he was prejudiced by the failure to submit additional jury instructions containing lesser-included offenses.

43.     "[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy."  Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997) (*quoting* Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)).  Decisions based on trial strategy only rise to the level of ineffective assistance of counsel if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir.) (quotation and alteration omitted), *cert. denied*, 531 U.S. 938 (2000).

44.     In response to the state habeas petition, containing the same claim, the State noted that the submission of a jury instruction for every charge on the lesser included offense of battery would have been inconsistent with Lovato's trial strategy, and therefore, could have caused the jury

to mistrust his testimony.  For example, Lovato admitted one battery, and the lesser-included instruction was submitted as to this charge.  But, at trial, Lovato either completely denied the other inappropriate sexual contacts or claimed the contacts were forced [upon him] and involuntary. [Doc. 8, Ex. J, p. 4.]

45.    The state court examined this argument and concluded that Lovato did not satisfy either of the prongs under Strickland, and moreover, that any failure to act by trial counsel may have been sound trial strategy. [Doc. 8, Ex. K.]

46.    Lovato failed to overcome the presumption of reasonableness, *i.e.,* or to demonstrate that  counsel's conduct was deficient, thereby overcoming the twin presumptions that the attorney was acting within the "wide range" of reasonable professional assistance and that his challenged conduct might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  He also failed to show that his attorney's decisions about jury instructions were "completely unreasonable."

47.    Because the lesser-included battery instructions would have been incompatible with Lovato's trial strategy, failure to request the lesser-included instructions was not ineffective assistance of counsel.  In addition, the evidence, including Lovato's taped confession to the victim's accusations, did not support giving the lesser-included battery instructions as to every charge. Finally, Lovato did not demonstrate prejudice, even if the lesser-included jury instructions had been appropriate.

48.    There is no Constitutional right to a lesser included offense instruction in non-capital cases.  Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). "Claims of erroneous jury instructions can justify setting aside a state conviction on habeas review only if the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense, or is otherwise constitutionally objectionable as, for example, by transgressing the

11

constitutionally rooted presumption of innocence." Id. at 938-939 (internal citations and punctuation omitted). Even if Lovato could prove that the evidence supported the requested instruction, he failed to demonstrate that failure to give the instruction was "so fundamentally unfair" as to sustain a habeas claim on this ground.

49.     There is no showing that the state court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). For these reasons, the claim is subject to dismissal, with prejudice.

### 2. Failure to File Witness List or Call Witnesses with Favorable Testimony

50.     Lovato argued that witnesses, who would have provided favorable testimony for Lovato, contacted his attorney's office but trial counsel failed to file a witness list including these witnesses. Thus, even though some of the witnesses were present at trial, outside the courtroom, they were not allowed to testify. Lovato further asserted that trial counsel did not notify the court of this alleged error at the beginning of trial so as to request a continuance. Instead, trial counsel informed the court that Lovato was prepared for trial. [Doc. 1, p. 5.]

51.     Specifically, Lovato claimed that one of the witnesses with favorable testimony was Archie, Angelic's brother. Supposedly, Archie would have testified that the childrens' mother instructed him to lie to the District Attorney's office about "parallel actions of a man that his mother was angry with." [Doc. 1, p. 5.] A second (unidentified) witness would have testified she had personal knowledge of a lie told by the alleged victim to authorities regarding a different man and "this man's mother relative to kidnaping charges." Several other (unidentified) witnesses would

have testified as to Mr. Lovato's pertinent character traits that were purportedly exculpatory as to the elements of the sex crimes charged. [Doc. 1, pp. 5-6.]

52.     Lovato fails to identify most of these witnesses and does not supply any affidavit testimony from them as to what testimony they would have given at trial and how that testimony could have changed the outcome of the trial.  Instead, Lovato makes only conclusory allegations that were considered and properly rejected by the state habeas court.

53.     "[T]he decision of which witnesses to call is quintessentially a matter of strategy." Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir.), *cert. denied*, 129 S.Ct. 1132 (2008). *See also* Strickland, 466 U.S. at 690.  The court does not second guess defense counsel's decision and cannot say his performance was deficient under the first prong of Strickland.  Moreover, Lovato provided no evidence of prejudice with respect to trial counsel's decision not to call certain witnesses.

54.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254 (d)(1).  Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### *3.  Failure to Cross-Examine Alleged Victim Regarding Sanchez*

55.     Lovato argues that his attorney should have cross-examined the victim regarding her accusations of other crimes committed by other individuals close in time to the instant allegations. According to Lovato, the victim's allegations against him were false and motivated by "ulterior motives." [Doc. 1, p. 6.]

56.     Lovato claims that the victim should have been examined about a sexual relationship she allegedly had with a man named Victor Sanchez and the fact that she ran away with him.

Lovato argues that trial counsel's lack of investigation into this matter prevented counsel from "go[ing] after the significant fact that [Angelic] lied to authorities regarding Victor Sanchez's mother kidnapping her . . . ." [Doc. 1, p. 6.]

57.     In response to this same claim in the state habeas proceeding, the State explained that the attorneys had argued about the admissibility of the abuse of the victim by Victor Sanchez. According to the arguments, 12-year old Angelic ran away and into the arms of Victor Sanchez who took advantage of her by having sexual intercourse with her. Sanchez accepted a plea agreement and at the time of Lovato's trial, was serving nine years in prison. When explaining why she ran away in the first place, Angelic alleged that Lovato was committing sexual crimes against her that made her living situation with him intolerable. [Doc. 8, Ex. J, p. 5.]

58.     The state district court heard arguments by counsel for both parties on this issue and prohibited the admission of such evidence because it was more prejudicial than probative. In so ruling, the state court relied on the rape shield law, NMRA 11-413, and NMRA 11-403. [Doc. 9, Ex. J, p. 6.]

59.     Trial counsel again brought this issue to the court's attention before cross-examination of Angelic. At a bench conference, Baiamonte asked the court to allow him to "explore this liaison with Victor Sanchez." Trial counsel argued that Angelic ran away because she wanted to have sex with Mr. Sanchez, not because Lovato was molesting her. The court limited cross-examination but allowed trial counsel to ask if there were any other reasons for Angelic's decision to run away. If she answered "No," Baiamonte was instructed he could not impeach her. [Doc. 8, Ex. J, p. 6.]

60.     Trial counsel was not ineffective by following the state court's ruling on admissibility of this evidence. Rather, he was bound by the state court's decision. Any other decision by trial

14

counsel as to this matter could have resulted in a mistrial.  In addition, the wisdom of attempting to impeach a 13-year old victim is suspect.  For example, a vigorous cross-examination of a child might have alienated jurors, elicited further sympathy for the victim, and discredited Lovato, who already had confessed to the crimes.  *See, e.g.,* <u>Gillette v. Tansy</u>, 17 F.3d 308, 312 (10th Cir. 1994) (noting that "cross-examination of the young victim in this case, who was fifteen at the time of trial, was a very delicate and difficult matter."); <u>Williams-Bey v. Trickey</u>, 894 F.2d 314, 316 (8th Cir.) (strategic decision not to cross-examine rape victim about certain information not ineffective assistance where defense attorney feared detailed cross-examination might elicit sympathy for the victim), *cert. denied*, 495 U.S. 936 (1990).

61.    Lovato neither demonstrated deficient representation by counsel nor prejudice.

62.    There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### *4.  Cross-Examination of Victim Regarding Suicide Attempt*

63.    Lovato argues that Baiamonte's cross-examination of Angelic regarding her in-court statement about attempted suicide elicited damaging evidence for Lovato and demonstrated lack of preparation by trial counsel. [Doc. 1, p. 7.]

64.    During direct examination of Angelic, she testified that she had tried to kill herself.

65.    During cross-examination, trial counsel asked if Angelic had told him during an interview that she had attempted suicide.  She responded that she had, and trial counsel merely stated "okay" and proceeded with specific questions about how she tried to kill herself.  Lovato claims trial

counsel either failed to properly impeach Angelic if she did not discuss the attempted suicide in the interview, or improperly elicited damaging testimony against the interests of Lovato.

66.    The State argued that Lovato's theory of the case revolved around and emphasized Angelic's damaged personality.  However, Lovato emphasized the damage was caused by an unstable home and absent, addicted parents.  Thus, Angelic's problems were not symptoms of Lovato's abuse.  According to the State, Lovato's cross-examination of Angelic was consistent with this trial strategy.  The State further explained that Lovato's trial counsel was very careful in not attacking Angelic and thereby alienating the jury, while at the same time he attempted to show she had a troubled life that was explained by her terrible childhood.

> It brings me no joy to cross-examine this child, but that's what we are going to have to get to.  I mentioned that she is a very confused young child.  She is dropped off at Audrey and Thomas's house because her mother cannot or will not provide for her – their care – her and her brother Archie.  Mother doesn't work jobs.  Mother does a lot of crack cocaine with this fellow sitting in the back of the room . . . So when the children become inconvenient, they drop the child off with Aunt Audrey.  Thomas did know the child and does know the child for whom he bought school clothes, bought school supplies, provided a roof, meals and stepped up to the plate in a way that Annette could not or would not do.
>
> . . .
>
> All you are hearing is from a confused girl, who had run away for some reasons and getting in a little bit of trouble, as you might imagine. . . . There is no more powerful way for a child to cast attention off herself or himself than to make a sexual allegation.  That's what happened.

[Doc. 8, Ex. J, attached Ex. A, pp. 25-26.]

67.    Based on the trial transcript, it is clear that trial counsel's emphasis on Angelic's troubled and confusing childhood, compounded by her mother's drug abuse, was part of counsel's trial strategy.  While perhaps this strategy was not "perfect," a defendant is not entitled to perfect

representation.  In addition, as stated above, strategic decisions of counsel are accorded much deference. Such deference is especially appropriate when the court reviews counsel's decision not to vigorously cross-examine a victim of sexual abuse.

68.    Here, Lovato failed to satisfy his "burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy."  In addition, he failed to demonstrate prejudice.

69.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### 5.  Trial Counsel's Failure to Demand Specificity of the Alleged Crimes

70.    Lovato argues there were long periods of time "within the vague time periods asserted in the indictment during which Mr. Lovato was not in contact with [Angelic] and lived in a different city." [Doc. 1, p. 8.]

71.    It might have been extremely damaging to Lovato for trial counsel to have attempted to "pin down," through a 13-year old victim of sexual abuse, the exact dates when Lovato engaged in crimes against Angelic.  After all, the evidence presented at trial showed that Angelic lived with Lovato and her aunt for extended periods of time and that Lovato and Angelic were alone at times. Moreover, Lovato confessed to the crimes.

72.    Again, Lovato neither demonstrated deficient representation by counsel nor prejudice, under the circumstances of this case, where the indictment alleged long time periods.

17

73. There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). For these reasons, the claim is subject to dismissal, with prejudice.

### *6. Failure to Show Entire Videotaped Interview with Lovato*

74. Lovato claims that the jury was shown an edited version of the videotaped interview while omitted portions of the video contained statements helpful to the defense. Lovato admits that this issue was argued pretrial, but contends that trial counsel failed to give proper Rule 413 notice to the State and failed to follow through with an investigation into information provided to him by Lovato and family members regarding false allegations made by Angelic relative to the "edited-out statements on the video." [Doc. 1, p. 8.]

75. In its response to the state habeas petition, Respondent noted that the parties had argued this issue before the court. Trial counsel attempted to convince the trial court to admit the entire videotaped confession, first by describing that the omitted videotaped testimony by Lovato would have shown Angelic could have been confused as to which man was sexually molesting her. "She had perhaps a number of paramours, even though she was 11 years old. It might have gotten confusing for her when she is trying to identify which man under which occasion." [Doc. 8, Ex. J, attached Ex. A, pp. 3-5.]

76. In ruling that the videotape would be redacted to exclude the self-serving hearsay testimony by Lovato, the trial court observed that Lovato was supposed to give prior notice under Rule 413 in order to seek admission of such testimony. The trial court suggested that if Lovato

could bring in the information in ways other than through inadmissible hearsay, then it could be admitted. [Doc. 8, Ex. J, attached Ex. A, p. 5.]

77.     The state court again clarified that the primary reason the entire videotape would not be played, including these self-serving statements by Lovato, was because it would be hearsay. [Id.]

78.     After the parties provided the state court with more details of the incident about which Lovato sought to testify, Judge Candelaria stated he was "struggling with the relevancy" because the incident took place subsequent to the time frame concerning allegations against Lovato. The state court concluded that the testimony by Lovato was more prejudicial than probative under Rule 403. [Doc. 8, Ex. J, attached Ex. A, at pp. 10-11.]

79.     While Lovato's attorney should have prepared and submitted a notice under Rule 413, it is clear that the state court prohibited the testimony of Lovato regarding Angelic's relations with another man for reasons other than lack of proper notice.

80.     Lovato neither demonstrated deficient representation by counsel nor prejudice.

81.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### *7.  Failure to Object to Hearsay During Mother's Testimony*

82.     Lovato argues that trial counsel should have objected to "obvious hearsay" testimony from Angelic's mother because the mother made a "string of damaging statements regarding what her daughter had said." [Doc. 1, p. 9.]

83.     Lovato did not specify which statements were hearsay or which statements were "damaging" to him.  In addition, Angelic testified at trial and was subject to cross-examination regarding any statements made by her mother.  *See* <u>Campbell v. Herdon</u>, 302 F. App'x 864 (11th Cir. 2008) (counsel not ineffective for failing to object to hearsay of child molestation victim through officer, school guidance counselor and videotaped interview because the victim testified at trial and was subject to cross-examination), *cert. denied*, 129 S.Ct. 1916 (2009).

84.     Lovato fails to demonstrate that his trial counsel's representation was deficient or prejudicial.

85.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### *8.  Failure to Call Available Impeachment Witness*

86.     Lovato claims that Archie, Angelic's brother, was prepared to testify at trial and could have impeached the mother's statements about Lovato's different treatment of Angelic and Archie.  For example, according to Lovato, Archie told trial counsel that Lovato was very good to him and bought him clothing and food.  The mother testified at trial that Lovato never bought such things for her son Archie. [Doc. 1, p. 9.]

87.     In response to the state habeas petition, the Respondent argued that such evidence would have been cumulative since Lovato testified to this matter.  Moreover, it was collateral and inadmissible under Rule 403.

88.     As stated previously, "the decision of which witnesses to call is quintessentially a matter of strategy." Boyle, 544 at 1139.  *See also* Strickland, 466 U.S. at 690.  Moreover, it is just as easy to speculate about favorable testimony, as to speculate about unfavorable testimony.  *See, e.g.*, United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir.) (rebutting defendant's assertion additional testimony would have been helpful by concluding "it is at least as reasonable, and maybe more so, to speculate that the testimony of those witnesses would have damaged defendant's case"), *cert. denied*, 479 U.S. 836 (1986).  It is possible that Angelic's brother, if called to testify, could have provided corroborating evidence that Lovato sexually molested and abused Angelic.

89.     Lovato failed to demonstrate deficient performance by counsel in electing not to call Angelic's brother at trial or prejudice.

90.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

### *9.  Failure to Properly Object to Det. Jacobson's Testimony Regarding Videotape*

91.     Lovato contends that trial counsel failed to object or objected on the wrong grounds throughout Detective Jacobson's "narrative and paraphrasing of Mr. Lovato's videotaped statement."

92.     Lovato again did not identify any portion of the transcript when Lovato made unsupported objections or failed to properly object to Detective Jacobson's testimony.

93.     Therefore, he failed to demonstrate deficient performance by counsel or prejudice.

21

94.     There is no showing that the state habeas court's ruling was "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). Nor did Lovato demonstrate that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2).  For these reasons, the claim is subject to dismissal, with prejudice.

<u>Summary</u>

95.     With respect to each of the nine claims of ineffective assistance of counsel, Lovato failed to establish that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of federal law, or that the proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings.  28 U.S.C. § 2254(d).  Moreover, any factual findings made by the state court are subject to the presumption of correctness.  28 U.S.C. § 2254(e)(1).  This is especially true when the habeas judge was also the trial judge and observed first hand trial counsel's performance at trial.  *See* <u>Schriro v. Landrigan</u>, 550 U.S. 465, 476 ("worth noting . . . that the judge presiding on postconviction review was ideally situated to make this assessment because she is the same judge that sentenced Landrigan . . . ."), *reh'g denied,* 551 U.S. 1177 (2007).

96.     In sum, Lovato generally did not make clear precisely what missteps his attorney allegedly made.  Even if he could show constitutionally deficient representation by counsel, he did not demonstrate "the reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different."  Moreover, Lovato did not show that any error by counsel was "so serious so as to deprive [him] of a fair trial." <u>Strickland</u>, 466 U.S. at 687, 688, 694.

## **Recommended Disposition**

That all of Lovato's claims be denied on the merits and that this matter, in its entirety, be

dismissed, with prejudice.

*Robert Hayes Scott*
_____
ROBERT H. SCOTT
UNITED STATES MAGISTRATE JUDGE